COMMONWEALTH vs. DAVID RUIZ, JR.

Hampden. December 2, 1997. - January 7, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Armed Home Invasion. Statute, Construction.*

A Superior Court judge correctly allowed a criminal defendant's motion to
dismiss a home invasion indictment where the provisions of G. L. c. 265,
§ 18C, the home invasion statute, do not apply in circumstances in which
a person arms himself after entering a home. [392-394]

INDICTMENT found and returned in the Superior Court Department on October 3, 1996.

A motion to dismiss was heard by *Bertha D. Josephson,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court. ·

*James M. Wodarski,* Assistant District Attorney, for the Commonwealth.

*Brownlow M. Speer,* Committee for Public Counsel Services, for the defendant.

FRIED, J. The Superior Court judge allowed a motion to dismiss the defendant's indictment for armed home invasion under G. L. c. 265, § 18C. We transferred the Commonwealth's appeal to this court on our own motion. The Commonwealth contends that § 18C applies to a case such as this, where a defendant armed himself after entering a home. As the statute applies only where a defendant is armed at the time of entry, we affirm the dismissal of the indictment.

On the evening of September 17, 1996, the defendant knocked on the apartment door of James and Joseph Garvey, two handicapped brothers. When Joseph opened the door, the defendant said that, if the brothers gave him twenty dollars, they would not have to pay their rent for that month. Despite the brothers' protests, the defendant then entered the apartment and yelled at Joseph to "give me the money." The defendant attempted to force his hand into Joseph's pocket, and in the ensu-

ing struggle the defendant grabbed one of Joseph's crutches and struck him repeatedly across the knees. When James entered the fray, the defendant punched and kicked him. The defendant then managed to grab Joseph's wallet and flee the apartment.

On October 3, 1996, a grand jury returned four indictments against the defendant, including one for home invasion in violation of G. L. c. 265, § 18C.[1] The defendant moved to dismiss the home invasion indictment, and the motion judge allowed the defendant's motion.

General Laws c. 265, § 18C, inserted by St. 1993, c. 333, provides that:

> "[w]hoever knowingly enters the dwelling place of another knowing or having reason to know that one or more persons are present within or knowingly enters the dwelling place of another and remains in such dwelling place knowing or having reason to know that one or more persons are present within[,] *while armed with a dangerous weapon*, uses force or threatens the imminent use of force upon any person within such dwelling place whether or not injury occurs, or intentionally causes any injury to any person within such dwelling place shall be punished by imprisonment . . . for life or for any term of not less than twenty years" (emphasis added).[2]

The Commonwealth contends that the Legislature's use of "while armed with a dangerous weapon" was intended to apply both where a defendant is armed at the moment of entry and where a defendant enters a dwelling place unarmed but then arms himself while remaining in that place.

The Commonwealth presents several arguments for its reading of § 18C. First, the Commonwealth reasons that requiring that a defendant be armed at the time of entry renders superfluous the "remains in such dwelling place" clause of the statute. That is not what the clause accomplishes. The statute applies *either* to entry while one knows or has reason to know that one

---

[1]The defendant was also indicted for armed robbery, assault and battery by means of a dangerous weapon, and assault and battery.

[2]We insert the bracketed comma for the reasons discussed in *Commonwealth* v. *Dunn*, 43 Mass. App. Ct. 58, 61 (1997) (inserting a comma to avoid the "absurd result" that its omission could permit interpreting § 18C's "while armed with a dangerous weapon" clause to refer to the occupant of the dwelling rather than to the perpetrator).

or more persons are present within *or* to entry without such knowledge but then remaining in the dwelling place after acquiring or having reason to acquire such knowledge. That a plain reading of § 18C suggests that in either scenario a defendant must be armed at the moment of entry does nothing to diminish the significance of these two alternative scienter clauses.

The Commonwealth next contends that interpreting the statute to require that a defendant be armed at the time of entry makes it "indistinguishable" from the armed assault in a dwelling statute, G. L. c. 265, § 18A. The prohibition of § 18A extends to "[w]hoever, being armed with a dangerous weapon, enters a dwelling house and while therein assaults another with intent to commit a felony . . . ." *Id.* See *Commonwealth* v. *Donoghue*, 23 Mass. App. Ct. 103, 111-112 (1986), cert. denied, 481 U.S. 1022 (1987) (describing three elements under § 18A). Adopting the more restrictive reading of § 18C does not make it coextensive with § 18A. Both §§ 18A and 18C require the Commonwealth to prove that the defendant was armed with a dangerous weapon at the time of entry into a dwelling house. If the Commonwealth seeks, however, to impose the more severe penalties of § 18C it must establish either that a defendant knew or had reason to know that one or more persons were present within the dwelling house at the time of entry or that the defendant gained such knowledge after entry but nevertheless remained there for some period of time prior to attacking or threatening the person.[3] These scienter requirements distinguish § 18C from § 18A. It is, of course, logically necessary that an assailant be aware of the person he assaults and thus the knowledge requirement of § 18A is necessarily satisfied in every case of an assault. Thus, if the defendant entered a dwelling without knowing or having reason to know of the presence of others, to prosecute under § 18C the Commonwealth would have to establish that, some appreciable time prior to the assault, the defendant remained there, and presumably could have chosen to depart, after coming to know or have reason to know that others were in the dwelling house.

Had the Legislature wanted to permit prosecution under § 18C in either of the two scenarios that the Commonwealth urges, it could have done so explicitly. General Laws c. 266,

---

[3]Section 18A goes beyond § 18C in requiring that the perpetrator assault "with intent to commit a felony," but § 18A provides for a less severe punishment. See G. L. c. 265, § 18A.

§ 14, for example, requires that the "offender be[] armed with a dangerous weapon at the time of such breaking or entry, *or so arm[] himself in such house*" (emphasis added). Given the lack of such clear language in § 18C and the much closer analogy between sections 18C and 18A, we decline to read into § 18C something that simply is not there.[4]

At the most, the Commonwealth's arguments suggest that § 18C is ambiguous. As is well established, however, criminal statutes must be construed strictly against the Commonwealth. See *Commonwealth* v. *Wotan*, 422 Mass. 740, 742 (1996); *Commonwealth* v. *Chavis*, 415 Mass. 703, 707 (1993). This does not mean that we read unambiguous statutory language to favor defendants; it means simply that, because "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes," *United States* v. *Batchelder*, 442 U.S. 114, 123 (1979), quoting *Lanzetta* v. *New Jersey*, 306 U.S. 451, 453 (1939), ambiguity must be resolved in favor of a defendant. See *Commonwealth* v. *Wotan*, *supra* at 743; *Commonwealth* v. *Chavis*, *supra* at 708.

We reject the Commonwealth's appeal and affirm the decision of the court below.

*So ordered.*

---

[4]The Commonwealth suggests that had the Legislature intended courts to interpret § 18C similarly to § 18A, the General Court would have used the exact "being" language of § 18A. Given the language in G. L. c. 266, § 14, however, that argument cuts both ways. Although sections 18A and 18C are not *identical*, they are functionally much closer than sections 18C and G. L. c. 266, § 14.