COMMONWEALTH vs. JOHN WILLIAMS.

No. 04-P-546.

Middlesex. March 3, 2005. - May 25, 2005.

Present: LENK, KAFKER, & KATZMANN, JJ.

*Workers' Compensation Act,* Fraud. *Insurance,* Fraud and concealment. *False Pretenses. Evidence,* Hearsay, Authentication of document. *Practice, Criminal,* Hearsay. *Larceny.*

At the trial of a criminal complaint charging the defendant with presenting a false insurance claim, in violation of G. L. c. 233, § 111A, the jury were warranted in finding that false statements the defendant made to an insurance adjuster in an interview, which were later transcribed into written form, and false statements on a Department of Industrial Accidents form satisfied the requirements of § 111A, where the form, rather than constituting hearsay or an admissible business or public record, was properly admitted in evidence as proof of the statutorily-required filing itself and what the filing contained, and where the form was sufficiently authenticated. [617-620]

The evidence at the trial of a criminal complaint was not sufficient to convict the defendant of larceny by false pretenses, in violation of G. L. c. 266, § 30(1), stemming from the defendant's filing of a fraudulent workers' compensation claim, where a Department of Industrial Accidents judge relied on the defendant's false statements in ordering an insurance company to make payment to the defendant, a situation different from the defrauded party or someone acting on behalf of the defrauded party being deceived into transferring money or property by the defendant or someone assisting the defendant. [620-623]

COMPLAINT received and sworn to in the Framingham Division of the District Court Department on June 25, 2001.

The case was tried before *Robert V. Greco,* J.

*Aisling Kennedy Morrissey* for the defendant.

*Eva M. Badway,* Assistant Attorney General, for the Commonwealth.

KAFKER, J. The defendant was convicted in the District Court of one count of fraud under the workers' compensation statute,

G. L. c. 152, § 14 (not contested on appeal),[1] one count of presenting a false insurance claim, G. L. c. 266, § 111A, and one count of larceny by false pretenses, G. L. c. 266, § 30(1), for which he received concurrent sentences.

The charges arose out of a fraudulent workers' compensation claim filed by the defendant, a truck driver, in which he alleged that battery acid leaked from the buckle of the seatbelt of his employer's truck onto his groin, and that he further injured himself upon alighting from the truck after emergency personnel responded to his call for help. The jury were warranted in finding that he misled or lied to medical personnel, lied to an insurance company investigator in a taped interview, submitted a false claim to the Department of Industrial Accidents (DIA), and lied at a DIA hearing.

On appeal, the defendant argues, first, that there was insufficient evidence to convict him of the false insurance claim charge as a matter of law because the statute requires the presentation to the insurance company of a false *written* claim, which he contends was not established; second, that the District Court judge abused his discretion by admitting in evidence a form submitted on behalf of the defendant to the DIA; and third, that there was insufficient evidence to convict him of the larceny by false pretenses charge as a matter of law because the Commonwealth failed to prove that the false statements were relied on by the insurance company, which opposed the claim from the outset and paid only in compliance with a conference order from an administrative judge of the DIA. For the reasons stated below, we affirm the judgment of conviction of presenting a false insurance claim and reverse the judgment of conviction of larceny by false pretenses.

1. *Standard of review.* The defendant claims he made a motion for a required finding of not guilty, although the only indication of this in the record is defense counsel's statement before the close of the Commonwealth's case that he would be making a motion for a required finding.[2] Ordinarily, where an objection is not preserved, we review for a substantial risk of a

---

[1]Any argument as to the G. L. c. 152, § 14, conviction is therefore waived.

[2]Motions for a required finding are only allowed after the close of the Commonwealth's case or the close of all the evidence, so the motion would

miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967); *Commonwealth* v. *Tavares*, 61 Mass. App. Ct. 385, 393-394 (2004). However, a verdict based upon legally insufficient evidence is inherently serious enough to create a substantial risk of a miscarriage of justice, so we review such claims without regard to the defendant's procedural shortcomings. See *Commonwealth* v. *McGovern*, 397 Mass. 863, 867-868 (1986); *Commonwealth* v. *Haddock*, 46 Mass. App. Ct. 246, 246-247 (1999); *Commonwealth* v. *Olivo*, 58 Mass. App. Ct. 368, 372 n.5 (2003).

2. *The false insurance claim conviction.* General Laws c. 266, § 111A, as amended through St. 2002, c. 138, § 1, is invoked when, "in connection with or in support of any claim under any policy of insurance issued by any company . . . and with intent to injure, defraud or deceive such company, [one] presents to it, or aids or abets in or procures the presentation to it of, any notice, statement, proof of loss, bill of lading, bill of parcels, invoice, schedule, account *or other written document,* . . . knowing that . . . [it] contains any false or fraudulent statement or representation of any fact or thing material to such claim" (emphasis added).

The defendant concedes that the government satisfactorily proved that he presented a claim for workers' compensation insurance and that he "lied about his accident" to an insurance adjuster, medical personnel, and the DIA with the intent to defraud or deceive; however, he argues that the statute required proof of a written document containing false statements, and such proof was lacking.

We conclude that the jury were warranted in finding that the false statements by the defendant to an insurance adjuster and false statements on DIA Form 110 satisfy the requirements of G. L. c. 266, § 111A.[3] The interview with the insurance company was preserved on tape and transcribed into written

have been premature at the time of defense counsel's statement. Mass.R. Crim.P. 25, as amended, 420 Mass. 1502 (1995).

[3]We need not decide whether other false statements satisfied the requirements of G. L. c. 266, § 111A. We note that the defendant was also convicted of violating G. L. c. 152, § 14(3), a criminal provision that is specifically directed at workers' compensation fraud and which defines prohibited conduct more broadly and without reference to "any other document." The defendant's

form. A written transcription of the taped interview was also submitted in evidence at trial. Furthermore, as the Legislature recognizes, there is no reason for treating recorded and written statements by claimants differently in this context. See G. L. c. 152, § 7B; G. L. c. 233, § 23A.

DIA Form 110 is required by statute: "Any claim for benefits shall be filed with the division of administration and the insurer on a form prescribed by the division, and shall specifically state the benefits claimed to be due and unpaid." G. L. c. 152, § 10(1), as amended through St. 1991, c. 398, § 26. Upon "the receipt of a claim for compensation . . . the division of administration shall notify the parties that it is in receipt of such claim or complaint." *Ibid.*

The defendant's Form 110 filing described the injury as follows: "While locking seat belt, acid seeped out of latch. Employee slipped getting out of truck." The form contained a box for the employee's signature, which was filled in as "John Williams," and a box for the attorney's signature, which was filled in as well. The filing of Form 110 initiated contested proceedings resulting in a conference order by a DIA judge requiring the insurer to pay the defendant benefits and his attorney a fee.[4] The conference order was admitted in evidence at the criminal trial, along with Form 110.

The defendant contends that this document was inadmissible hearsay that was also insufficiently authenticated. The Commonwealth responds that Form 110, which was located in the insurance company file, was properly admitted under the business records exception. G. L. c. 233, § 78. We conclude that it is admissible but for different reasons.[5] The form is not a business record under the statute, for it was not "made in good faith in the regular course of business." *Id.*, as amended through St.

false testimony on the record at his DIA hearing fits squarely within the prohibited conduct set forth in § 14(3). His statements and omissions to the medical providers may also fit more neatly within the language of § 14(3) than within the language of G. L. c. 266, § 111A.

[4] In order for the attorney to receive a fee, the statute requires that the "claim shall have been sent to the insurer by certified mail." G. L. c. 152, § 10(1), as amended through St. 1991, c. 398, § 26.

[5] We are not limited to the reasons set forth by the trial court, but may affirm the admission of evidence on any ground apparent from the record. *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 102 (1997).

1954, c. 442, § 1. See *Wingate* v. *Emery Air Freight Corp.*, 385 Mass. 402, 406 (1982) ("proponent must show that all persons in the chain of communication, from the observer to the preparer, reported the information as a matter of business duty").

The information on the form was prepared by the defendant or by his attorney based on his representations, not by the insurance company or even the DIA employees. For the same reasons, it also does not fit within the public records exception. See Liacos, Brodin & Avery, Massachusetts Evidence § 8.13.1, at 541-542 (7th ed. 1999) ("record must have been prepared by a public official acting within the scope of his duty before it falls within [public record] exception" to hearsay rule).

Although not admissible as a business or public record to prove the truth of the matters asserted, the form was properly admitted as proof of the statutorily-required filing itself, and what the filing contained. See *id.* at 542 ("public record may be available for use for non-hearsay purposes — e.g., to show constructive notice, recording, or as the source of admissions"). See also *Commonwealth* v. *Brum*, 438 Mass. 103, 116-117 (2002), citing *Anderson* v. *United States*, 417 U.S. 211, 219-220 (1974) (out-of-court statements admissible where offered to prove they were made, "so as to establish a foundation for later showing, through other admissible evidence, that they were false"). The defendant's argument that the Form 110 was insufficiently authenticated because there were no witnesses to its creation or to his signature is also unavailing.[6] "Where the nature of the contents of the document or other circumstantial facts indicate its authenticity, the document may be admitted." Liacos, Brodin & Avery, *supra*, § 12.3.2 at 738. Here, there is no question that this form was submitted to the DIA and the insurer by either the defendant or his counsel because otherwise, the defendant would not have received benefits and the attorney

[6]For the first time on appeal, the Commonwealth further argues that the statement in the form constitutes an admission of the defendant. The Commonwealth does not, however, address how the failure to authenticate the defendant's signatures on the form affects the analysis of the form as an admission. Compare *Zucco* v. *Kane*, 439 Mass. 503, 508 (2003) ("plaintiff's signature on the lump-sum agreement indicated her adoption of [its] contents"). As resolution of this issue is unnecessary to decide the case, we decline to consider it.

would not have received fees. See *Commonwealth* v. *Duddie Ford, Inc.,* 28 Mass. App. Ct. 426, 435 (1990), *S.C.,* 409 Mass. 387 (1991) ("the documents were sufficiently authenticated to be admitted to show what was on record at the bank").

Furthermore, G. L. c. 266, § 111A, can be satisfied not only if the defendant presents the false statement directly, but also if he procures its presentation or aids and abets in its preparation; therefore, the authenticity of his signature on the form is not determinative.

In sum, Form 110 was properly admitted in evidence. It was also unquestionably presented to the insurance company as required by G. L. c. 266, § 111A. Finally, the jury were warranted in finding that this written document, when combined with other admissible evidence establishing that statements therein were false, fully satisfied the requirements of G.L. c. 266, § 111A.

3. *The larceny conviction.* General Laws c. 266, § 30(1), provides that "[w]hoever . . . with intent to defraud obtains by false pretence . . . the property of another . . . shall be guilty of larceny."[7]

As generally described in the case law, "[a] prosecution for larceny by false pretenses requires proof that (1) a false statement of fact was made; (2) the defendant knew or believed that the statement was false when he made it; (3) the defendant intended that the person to whom he made the false statement would rely on it; and (4) the person to whom the false statement was made did rely on it and, consequently, parted with property." *Commonwealth* v. *Mills,* 436 Mass. 387, 396-397 (2002). See *Commonwealth* v. *Green,* 326 Mass. 344, 347-348 (1950); *Commonwealth* v. *Kiernan,* 348 Mass. 29, 46 (1964),

---

[7]The historically distinct crimes of larceny (carrying off with intent permanently to deprive), embezzlement (misappropriation of property of another lawfully possessed), and false pretenses (obtaining title by inducing reliance on a false representation of material fact) have been merged in G. L. c. 266, § 30, into a single offense. See *Commonwealth* v. *Mills,* 436 Mass. 387, 392 (2002). "Larceny can be established by evidence that would have warranted a conviction upon any one of the three formerly separate charges." *Ibid.* However, the Commonwealth does not press on appeal any other theory of larceny, nor does it appear from the record that another theory would be availing.

cert. denied sub nom. *Gordon* v. *Massachusetts*, 380 U.S. 913 (1965).

The defendant concedes that the Commonwealth introduced sufficient evidence for the jury to find that the first three requirements had been met. But the defendant contends that the Commonwealth did not and could not prove that the insurance company relied on the false statements and parted with its property as a result of its reliance. In fact, the defendant accurately argues that the insurance company disbelieved the statements from the beginning, denied the claim, instigated a fraud investigation, and only paid the claim when it was temporarily ordered to do so by a judge of the Department of Industrial Accidents.

The Commonwealth argues that the DIA judge relied on the false statements in issuing his conference order and that his reliance is sufficient. There is no question that based on the evidence introduced at trial, the jury were warranted in finding that the DIA judge relied on the false statements to order the insurance company to make the payments.[8] The question is whether a transfer of property achieved under these circumstances constitutes larceny by false pretenses. This appears to be an issue of first impression.[9]

Larceny by false pretenses is a crime with deep historical roots.[10] The four requirements discussed in *Commonwealth* v. *Mills*, *supra*, have been long understood and consistently applied, including the requirement that there be a causal connec-

---

[8] "It is enough . . . if the fraudulent representation . . . [is] a decisive although not the sole influence operating upon the mind of the person to induce the giving up of money." *Commonwealth* v. *Greenberg*, 339 Mass. 557, 575 (1959), quoting from *Commonwealth* v. *Farmer*, 218 Mass. 507, 513 (1914). See *Commonwealth* v. *Camelio*, 1 Mass. App. Ct. 296, 300 (1973).

[9] Benefits under an insurance policy are property for the purpose of larceny by false pretenses. See *Commonwealth* v. *Gall*, 58 Mass. App. Ct. 278, 287 (2003). The novel question is whether a victim's compliance with a judicial order satisfies the reliance element of the crime.

[10] It originated in a 1757 English statute that provided for the punishment of anyone who "knowingly and designedly, by false pretense or pretenses, shall obtain from any person or person, money, goods, wares or merchandises, with intent to cheat or defraud any person or persons of the same." 30 Geo. II, c. 24 (1757), quoted in LaFave, Substantive Criminal Law § 19.7, at 114 (2d ed. 1986).

tion between the false pretenses and the transfer of property. As explained by Professor LaFave, "For false pretenses it is necessary that the swindler's misrepresentation *cause* the victim to pass . . . property . . . to the swindler. . . . [I]f the victim . . . does not believe the misrepresentations, the crime is not committed. He may pass [the property or money to the defendant], though knowing the defendant to be lying, in order to prosecute him for the crime; but the prosecution for the completed crime (though not for the attempt) must fail for lack of the element of reliance." (Emphasis original.) LaFave, Substantive Criminal Law § 19.7(b), at 122 (2d ed. 1986).[11]

That being said, we recognize that larceny by false pretenses encompasses more than direct dealings between the defendant and the defrauded party: the crime may be accomplished through the duplicity of others or the duping of those acting on behalf of the defrauded party. See, e.g., *Commonwealth* v. *Hamblen*, 352 Mass. 438, 443 (1967) (rejecting argument that no false statements attributable to defendant were relied on by defrauded company where false statements were not directly presented or directly relied on, but rather passed on indirectly through a person at the company involved in the scheme). See also *Commonwealth* v. *Call*, 38 Pick. 515, 520-522 (1839) (defendant pretended to be the collection agent of creditor and by false pretenses got the debtor to provide him the money owed creditor); *Commonwealth* v. *Kiernan*, 348 Mass. at 48 ("[n]or does it help the defendants that, although the false statement was made to the Authority" in parking lot kickback scheme, "it was [bank handling the Authority's bond proceeds] that parted with the money"); *Commonwealth* v. *Camelio*, 1 Mass. App. Ct. 296, 299 (1973) (attorney and physician involved in scheme responsible for each other's actions). The court has not rigidly or woodenly applied the historic four-part test discussed above. See *Commonwealth* v. *Kiernan, supra* at 48, quoting from *Commonwealth* v. *Johnson*, 167 Ky. 727, 733 (1916) ("All that is necessary to establish larceny by false pretenses is proof that a 'false statement . . . [was] made, with the intention to commit a fraud, and money or property . . . [was] thereby obtained' "). See also *Commonwealth* v. *Call, supra*; *Commonwealth* v. *Ham-*

---

[11]Williams was not charged with attempted larceny.

*blen, supra; Commonwealth* v. *Camelio, supra* at 300. Even in these cases, however, someone acting on behalf of the defrauded party was deceived into transferring money or property by the defendant or someone assisting the defendant.

We have been presented with no cases, nor are we aware of any, in which judicial reliance on a defendant's misstatements, resulting in a compelled transfer of the defrauded party's property, was found to constitute larceny by false pretenses.[12] Such an interpretation would untie the crime from its historic moorings, particularly in a case in which the defrauded party refused to believe the statements, instigated a fraud investigation, and opposed the payments in court.

Our conclusion that the defendant's actions do not amount to larceny by false pretenses does not, of course, equate to an exoneration of the conduct itself. The defendant's false statements in the workers' compensation system dispute resolution process constitute a classic violation of G. L. c. 152, § 14(3), a criminal statute that provides for punishment in the State prison for up to five years, fines of up to ten thousand dollars, and restitution.

*Conclusion.* For the foregoing reasons, the defendant's convictions of workers' compensation fraud and presenting a false insurance claim are affirmed, and his conviction of larceny by false pretenses is reversed and the verdict is set aside.

*So ordered.*

---

[12]An argument could be made that under the interpretation advocated by the Commonwealth, a prosecution for larceny by false pretenses could be based on any award stemming from a deliberately false statement made in any judicial or administrative proceeding.