### COMMONWEALTH *vs.* JOSEPH SOSTILIO.

Worcester. September 26, 1949. — December 29, 1949.

Present: QUA, C.J., LUMMUS, SPALDING, & COUNIHAN, JJ.

*Homicide. Wanton or Reckless Conduct. Racing. Motor Vehicle*, Operation. *Words*, "Wanton or reckless conduct."

A finding of wanton or reckless conduct on the part of the operator of a "midget" automobile in a race on a race track, and his conviction of manslaughter, were warranted by evidence that, while his automobile, four feet wide, was travelling at over forty miles an hour, he attempted to pass another automobile ahead through a two foot space between it and the side of the track, causing it to collide with and overturn a third automobile, as a result of which the operator of the third automobile was killed.

INDICTMENT, found and returned on August 18, 1948.

The case was tried in the Superior Court before *Fairhurst,* J., under G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended. Following a verdict of guilty and sentence, the defendant filed an appeal and assignment of errors.

*J. S. Derham, (W. T. Buckley & F. X. Reilly, Jr.,* with him,) for the defendant.

*A. B. Cenedella,* District Attorney, (*A. A. Gelinas,* Assistant District Attorney, with him,) for the Commonwealth.

LUMMUS, J.   The indictment against the defendant was
in three counts.   The first charged that the defendant, on
June 25, 1948, "did assault and beat Stephen D. Bishop,
and by such assault and beating did kill Stephen D. Bishop."
The second charged that the defendant on that day "did
drive a motor vehicle on a race track in a wanton and reck-
less manner, and did thereby assault and beat Stephen D.
Bishop, and by such assault and beating did kill said Stephen
D. Bishop."   The third charged that the defendant on that
day "did in a wanton and reckless manner operate a motor
vehicle in a race with other motor vehicles, and as a result
of said wanton reckless operation caused mortal injuries
to one Stephen D. Bishop, said injury resulting in his death."
The jury returned a verdict of guilty on all three counts.

The only assignment of errors is that the evidence did not
warrant a conviction upon the indictment, and consequently
that there was error in denying the defendant's motion for
a directed verdict in his favor.

The injuries that caused the death of Bishop were received
during a race of "midget" automobiles at the Mohawk
Stadium in Lunenburg, a race course licensed by the select-
men under G. L. (Ter. Ed.) c. 140, § 181.   The race course
was elliptical in shape.   Its inside circumference was nine
hundred thirty-four feet, consisting of two straight courses
of two hundred feet each, and two curved ends measuring
two hundred sixty-seven feet each.   The surface of the
track on which the automobiles raced was forty feet wide,
but widened to fifty feet at the curved ends.   The surface
of the track was of black asphalt.   There were bankings
two feet high on the straight sides of the track, which rose
higher on the curved ends.   On each of the curved ends
there was an apron of gray concrete two feet wide on the
inside of the track, which apron was on about the same level
as the track but was corrugated and rough.   The wheelbase
of the "midget" racing automobiles was about seventy
inches, and their width was about four feet.   The evening of
the accident was fair, and the track well lighted.   There
were six drivers in the race.   The automobiles were moving

at the start of the race. A driver named Niemi started on the inside of the track, in the front row, and opposite him on the outside was Bishop. Behind them were Provencher and Woods, in the next row. Behind them were Bernardi and the defendant, who were put in the rear row because they were the most experienced drivers and had the fastest automobiles.

There was evidence warranting the following findings. When the automobiles had travelled somewhat more than half a lap, the left wheels of Niemi's automobile were only two feet from the inside of the track. The defendant tried to drive his automobile to the left of Niemi's, although there was not sufficient space for him to pass Niemi on the left. The defendant was driving upwards of forty miles an hour. There was evidence that he struck Niemi's automobile, and pushed it to the right into Bishop's automobile, which turned over three times. Other evidence was that the defendant tried to drive to the left of Niemi, causing Niemi to turn to the right to avoid him and to collide with Bishop. Bishop sustained such injuries to his head that he died within a few hours.

The question in this case is whether there is evidence of wanton or reckless conduct on the part of the defendant. Wanton or reckless conduct has been defined as "intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another." *Commonwealth* v. *Welansky*, 316 Mass. 383, 399. *Commonwealth* v. *Bouvier*, 316 Mass. 489, 494. *Scaia's Case*, 320 Mass. 432, 434. Wanton or reckless conduct is the legal equivalent of intentional conduct. If by wanton or reckless conduct bodily injury is caused to another, the person guilty of such conduct is guilty of assault and battery. And since manslaughter is simply a battery that causes death, if death results he is guilty of manslaughter. *Commonwealth* v. *Welansky*, 316 Mass. 383, 401. *Commonwealth* v. *Bouvier*, 316 Mass. 489, 494. *Sheehan* v. *Goriansky*, 321 Mass. 200, 204.

In *Commonwealth* v. *Collberg*, 119 Mass. 350, 353, Endicott, J., conceded that "The common law recognizes as not necessarily unlawful certain manly sports calculated to give bodily strength, skill and activity." Doubtless this is true of certain sports, like wrestling, fencing and American football, which involve as an essential part of the game a certain amount of physical contact. In *Regina* v. *Bradshaw*, 14 Cox C. C. 83, where a football player was killed by being struck in the stomach by a charging opponent, Bramwell, L. J., charged that the defendant would be guilty if his conduct was reckless and indifferent to the safety of the other. In the present case physical contact was not an essential part of the racing of automobiles. The insistence of the defendant in attempting to drive past those ahead of him when there was not room to do so, which made a collision almost inevitable, could be found wanton and reckless conduct, and support a conviction for manslaughter.

*Judgment affirmed.*