NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-625                                      Appeals Court


COMMONWEALTH  vs.  BRAD D. HAMILTON.


No. 14-P-625.

Worcester.      December 12, 2014. - April 13, 2015.

Present:  Rubin, Milkey, & Carhart, JJ.


Assault and Battery.  Hypodermic Needle.  Wanton or Reckless
     Conduct.  Practice, Criminal, Required finding,
     Instructions to jury.


     Indictment found and returned in the Superior Court
Department on December 13, 2012.

     The case was tried before Daniel M. Wrenn, J.


     Rebecca Kiley, Committee for Public Counsel Services, for
the defendant.
     Stephen J. Carley, Assistant District Attorney, for the
Commonwealth.


     CARHART, J.  The defendant appeals from his conviction of

assault and battery by means of a hypodermic syringe or needle

(hypodermic needle, or needle) in violation of G. L. c. 265,

§ 15C(b),[1] arguing that the evidence was insufficient to support a conviction and that the trial judge erroneously instructed the jury.  We affirm.

Background.  "Viewing the evidence in the light most favorable to the Commonwealth, the jury could have found the following facts."  Commonwealth v. Angelo Todesca Corp., 446 Mass. 128, 129 (2006).

On July 16, 2012, Worcester police Officer Ryan Stone responded to a call for a "wellness check" at a Price Chopper store and was directed to the bathroom.  Officer Stone entered the bathroom and ordered the person inside the stall to come out.  The defendant came out of the stall and put his hands on the wall.  Officer Stone observed items used to clean or use a hypodermic needle on the back of the toilet in the stall, and also observed something in the defendant's right hand.  He asked

---

[1] Under G. L. c. 265, § 15C(b), inserted by St. 2006, c. 172, § 12, "[w]hoever commits an assault and battery upon another, by means of a hypodermic syringe [or] hypodermic needle, . . . shall be punished . . . " (G. L. c. 265, § 15C[a], punishes a simple assault perpetrated by the same means). Statute 2006, c. 172, "An Act relative to HIV and Hepatitis C Prevention," is part of an ongoing effort by the Legislature "to combat a substantial public health threat:  the transmission of blood-borne diseases by intravenous drug abusers." Commonwealth v. Landry, 438 Mass. 206, 209 (2002) (analyzing G. L. c. 94C, § 27 [f], inserted by St. 1993, c. 110, § 142; statutory scheme was later revised by St. 2006, c. 172, § 3).  The act created programs "designed to protect the public health and the environment by providing for the safe [and] secure . . . disposal of hypodermic needles," reflecting the danger the Legislature ascribes to needles used to inject drugs.  G. L. c. 94C, § 27A(d), inserted by St. 2006, c. 172, § 3.

the defendant to drop what he was holding, but the defendant did not do so. The officer asked the defendant "where the needle was," and the defendant answered that the needle was in his pocket. Officer Stone told the defendant that he was going to be placed in handcuffs and asked him to put his hands behind his back. Receiving no response from the defendant, Officer Stone took the defendant's left hand, placed it behind his back, and cuffed it. As the officer reached for the defendant's right hand, he again ordered the defendant to drop whatever was in his right hand. Officer Stone felt the defendant tense up, and as the officer attempted to cuff his hand, the defendant jerked and thrust it at Officer Stone. Officer Stone "felt a stinging sensation" in his hand and realized that he had been pricked by the needle.[2] An ambulance arrived and took both men to the hospital for treatment.

At trial, the defendant argued that he accidentally struck Officer Stone with the needle. After the close of evidence, the judge heard requests for jury instructions. He denied the defendant's request for insertion of one line into the portion of the charge relating to recklessness.[3] There was no objection

---

[2] Officer Stone was wearing gloves at the time.

[3] The defendant asked that, after defining "bodily injury," the judge instruct the jury as follows: "For example, an act that only shakes up a person or causes only momentary discomfort would not be sufficient."

after the judge charged the jury without including the requested instruction.[4]

Discussion.  1.  Sufficiency of the evidence.  The defendant argues that there was insufficient evidence of substantial harm, which is necessary to sustain a conviction for reckless assault and battery with a hypodermic needle.  "Sufficient evidence exists when, viewed in the light most favorable to the Commonwealth, a rational fact finder could find all material elements of the offense established beyond a reasonable doubt."  Commonwealth v. McCollum, 79 Mass. App. Ct. 239, 245 (2011), citing Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).

There are two theories of liability for assault and battery under G. L. c. 265, § 15C(b):  "intentional battery and reckless battery."  Commonwealth v. Porro, 458 Mass. 526, 529 (2010).  The defendant was convicted under the recklessness theory.  "A reckless assault and battery is committed when an individual engages in reckless conduct that results in a touching producing physical injury to another person . . . ."  Ibid.  To sustain a conviction, "the Commonwealth must prove (1) that the defendant's 'conduct involve[d] a high degree of likelihood that substantial harm will result to another,' Commonwealth v.

_____

    [4] At a sidebar conference following the charge, counsel for the defendant stated that they were "[s]atisfied."

Welansky, [316 Mass. 383, 399 (1944)], or that it 'constitute[d] . . . a disregard of probable harmful consequences to another,' Commonwealth v. Vanderpool, [367 Mass. 743, 747 (1975)], and (2) that, as a result of that conduct, the victim suffered some physical injury." Commonwealth v. Welch, 16 Mass. App. Ct. 271, 275 (1983). The injury must have "interfered with the health or comfort of the victim. It need not have been permanent, but it must have been more than transient and trifling." Commonwealth v. Burno, 396 Mass. 622, 627 (1986).

Here, the Commonwealth presented evidence that the defendant thrust his hand at Officer Stone while holding what jurors could infer was a recently used hypodermic needle. "Recklessness as a standard of criminality is generally reserved for conduct that creates an unacceptable risk of severe harm to others," Commonwealth v. Dellamano, 393 Mass. 132, 137 (1984), and G. L. c. 265, § 15C, reflects "a legislative determination" that the improper use, storage, or disposal of a hypodermic needle creates such a risk. See Commonwealth v. Catalina, 407 Mass. 779, 790 (1990) (discussing Legislature's justification for placing heroin in most dangerous category of controlled substances). "Considering the inherently dangerous nature of heroin" and the fact that the Legislature enacted G. L. c. 265, § 15C, although G. L. c. 265, §§ 15A and 15B, already criminalized assault and battery (and assault) by means of a

dangerous weapon, "the defendant's conduct [of thrusting a recently used hypodermic needle at Officer Stone] involved a high degree of likelihood that substantial harm would result to [Stone]." Commonwealth v. Perry, 34 Mass. App. Ct. 127, 130, S.C., 416 Mass. 1003 (1993).

A reasonable juror could conclude that being struck by the needle with enough force to puncture a glove and then the skin "interfered with the health or comfort" of Officer Stone, Commonwealth v. Burno, supra, especially in light of the special danger the Legislature ascribes to hypodermic needles.[5] Officer Stone "felt a stinging sensation" in his hand "like an electric shock," and received treatment at the hospital. Viewing this evidence in the light most favorable to the Commonwealth, the jury could have found that Officer Stone's injury was neither transient nor trifling. Contrast ibid. ("transient and trifling" injuries include an alleged victim being "shaken up" but by own admission uninjured, or having "sore wrist for only a few minutes").

2. Jury instruction. Because there was no objection as required by Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979), to the instructions given, we review for a substantial risk of a

---

[5] General Laws c. 265, § 15C(b), does not differentiate between used and unused hypodermic needles. We do not mean to suggest that a needle need be tainted by drugs or bodily fluids to satisfy this element.

miscarriage of justice.  Commonwealth v. Freeman, 352 Mass. 556, 563-564 (1967).  Commonwealth v. Torres, 420 Mass. 479, 483 (1995), and cases cited.  There was no risk of a miscarriage of justice from the judge's refusal to provide an example of bodily injury that would be insufficient to sustain a conviction of reckless assault and battery.  The judge instructed the jury that "[t]he injury must be sufficiently serious to interfere with Mr. Stone's health or comfort, and more than trifling, though it need not be permanent."  This was an accurate statement of the law, and it is doubtful that the defendant's requested example would have added anything to the jury's understanding thereof.

Judgment affirmed.