NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-966                                            Appeals Court

COMMONWEALTH  vs.  EMMANUEL LOUIS.

No. 17-P-966.

Middlesex.     July 9, 2018. - November 6, 2018.

Present:  Blake, Sacks, & Ditkoff, JJ.


Armed Assault with Intent to Murder.  Armed Assault in a
    Dwelling.  Assault and Battery by Means of a Dangerous
    Weapon.  Evidence, Knife, Motive.



    Indictments found and returned in the Superior Court
Department on September 13, 2016.

    The cases were heard by Thomas P. Billings, J.


    Alexandra H. Deal for the defendant.
    Jamie M. Charles, Assistant District Attorney, for the
Commonwealth.


    DITKOFF, J.  The defendant, Emmanuel Louis, appeals from

his convictions following a jury-waived trial of armed assault

with the intent to murder, G. L. c. 265, § 18 (b); armed assault

in a dwelling, G. L. c. 265, § 18A; aggravated assault and

battery by means of a dangerous weapon, G. L. c. 265,

§ 15A (c) (i); and assault and battery by means of a dangerous weapon on a person sixty years or older, G. L. c. 265, § 15A (a). We conclude that the evidence that the defendant swung his arm while holding a knife, knowing that the primary victim's mother was in close proximity, was sufficient to establish a reckless assault and battery on the mother. Further concluding that the trial judge could have rationally found that the defendant was armed at the time he entered the primary victim's house, we affirm.

1. Background. The defendant's wife was living in the victim's home in Waltham, and the victim had forbidden the defendant to come to the house. The defendant told his wife that he believed that the victim was "trying to destroy his relationship."

One morning, the defendant's wife and the victim saw the defendant outside the victim's house, in front of a sliding glass door. The defendant's hand was raised above his head in a fist, and he was apparently grasping an object. The defendant entered through the sliding glass door, tripped and fell to the floor, stood up, and then began stabbing the victim. Although the victim could not see what the defendant was holding, she testified that he used the object that was in his hand to stab her.

While the defendant was stabbing the victim, the victim's eighty-two year old mother attempted to intervene by grabbing the defendant's shoulder. In response, the defendant stepped away from the victim and swung his arm. The victim's mother suffered a deep cut to the palm of her hand. The defendant said, "Hey, Grandma, stay away," and fled. Both the victim and her mother required medical care and were brought to the hospital. The victim suffered thirty-one stab wounds and was hospitalized for ten days. The victim's mother required stitches to her hand.

After being arrested, the defendant "continuously mumbled about what did you expect me to do, she was trying to break up my family." The defendant later left a recorded message with his family in which he stated that he "just made an example out of" the victim, and that he "did it because [the victim] must never think that she could do that again."

2. Standard of review. "When reviewing the denial of a motion for a required finding of not guilty, 'we consider the evidence introduced at trial in the light most favorable to the Commonwealth, and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Commonwealth v. Faherty, 93 Mass. App. Ct. 129, 133 (2018), quoting Commonwealth v. Oberle, 476 Mass. 539, 547 (2017). "The inferences that support a conviction 'need

only be reasonable and possible; [they] need not be necessary or inescapable.'" Commonwealth v. Waller, 90 Mass. App. Ct. 295, 303 (2016), quoting Commonwealth v. Woods, 466 Mass. 707, 713, cert. denied, 134 S. Ct. 2855 (2014).

3. Assault and battery by means of a dangerous weapon on a person age sixty or older. "There are two theories of liability for assault and battery . . . : 'intentional battery and reckless battery.'" Commonwealth v. Hamilton, 87 Mass. App. Ct. 274, 276 (2015), quoting Commonwealth v. Porro, 458 Mass. 526, 529 (2010). Under the recklessness theory, "the Commonwealth must prove (1) that the defendant's 'conduct involve[d] a high degree of likelihood that substantial harm will result to another,' or that it 'constitute[d] . . . a disregard of probable harmful consequences to another,' and (2) that, as a result of that conduct, the victim suffered some physical injury" (citations omitted). Hamilton, supra, quoting Commonwealth v. Welch, 16 Mass. App. Ct. 271, 275 (1983). It is not necessary that the defendant intended to touch the victim, but "the act, itself, must be intentional, and its character wanton and reckless." Commonwealth v. Mistretta, 84 Mass. App. Ct. 906, 907 (2013). The injury "need not have been permanent, but it must have been more than transient and trifling." Hamilton, supra, quoting Commonwealth v. Burno, 396 Mass. 622, 627 (1986). See Burno, supra (to meet recklessness standard,

injury must "interfere[] with the health or comfort of the victim").

Here, sufficient evidence existed for the trial judge to find that both elements of a reckless battery on the victim's mother were proved. While the defendant was stabbing the victim, the victim's mother came up behind him and grabbed his shoulder. Despite knowing there was a person touching his shoulder, the defendant swung his arms, while still gripping the knife, creating a high degree of likelihood that substantial harm would be inflicted on anyone in close proximity. See Hamilton, 87 Mass. App. Ct. at 277, quoting Commonwealth v. Perry, 34 Mass. App. Ct. 127, 130 (1993) ("[T]hrusting a recently used hypodermic needle at [an officer] involved a high degree of likelihood that substantial harm would result to [the officer]"). Cf. Commonwealth v. Pease, 49 Mass. App. Ct. 539, 542 (2000) (defendant pushed victim with force, "creating the requisite level of risk of physical harm to sustain a conviction of manslaughter" under recklessness theory). The defendant's conduct involved a high degree of likelihood of substantial harm to the victim's mother.

The Commonwealth also presented sufficient evidence that the victim's mother's injury was more than transient and trifling. The victim's mother suffered a deep cut on the palm of her hand. As a result of her wound, the victim's mother was

taken to the hospital and required stitches. The trial judge could reasonably conclude that being stabbed in the hand with enough force to draw blood and require stitches "interfered with the health or comfort" of the victim's mother. Hamilton, 87 Mass. App. Ct. at 276, quoting Burno, 396 Mass. at 627. The victim's mother's injury, therefore, was neither transient nor trifling. Contrast Burno, supra at 623, 627 (injury is considered "transient and trifling" where victim was "shaken" and his "wrist was sore and [he] held it for a 'few minutes'").

We reject the defendant's theory that the evidence was insufficient to show that the defendant's knife was the cause of the mother's injuries. Although the victim's mother did not actually see the knife while she was being cut, she did see the defendant stabbing her daughter with the knife. She then was cut when the defendant, who was still attacking her daughter, swung his hand while she was in contact with him. The trial judge could reasonably infer that the knife remained in the defendant's hand and caused the victim's mother's injury. See Waller, 90 Mass. App. Ct. at 303.

The case of Commonwealth v. Correia, 50 Mass. App. Ct. 455 (2000), is instructive. There, the defendant, a prisoner, "was 'completely out of control'" and "was kicking his feet and flailing his arms." Id. at 458. He kicked one of the correctional officers in the chest and stomach, sending the

officer into a metal railing, and requiring hospital treatment for a sore back and a concussion.  Id.  We found that this was reckless conduct, despite the absence of "[p]roof of an intent to strike the officer."  Id.  Similarly here, the defendant's swinging his arm with a knife when he knew another person was in close proximity was enough to establish a reckless battery.[1]

4.  Armed assault in a dwelling.  To sustain a conviction under G. L. c. 265, § 18A, the Commonwealth was required to prove that (1) the defendant "entered a dwelling that was not his own while armed with a dangerous weapon"; (2) he "assaulted another inside the dwelling"; and (3) "the assault was committed with the intent to commit a felony."  Commonwealth v. Negron, 462 Mass. 102, 109 (2012).  The defendant contests only the first element -- whether the defendant "was armed with a dangerous weapon at the time of entry into a dwelling house."  Commonwealth v. Putnam, 75 Mass. App. Ct. 472, 481 n.9 (2009).  See Commonwealth v. Ruiz, 426 Mass. 391, 393 (1998) (under G. L. c. 265, § 18A, Commonwealth must prove that defendant was armed at time of entry, not merely after entry).

---

[1] Because we find sufficient evidence to support the conviction of assault and battery by means of a dangerous weapon under a recklessness theory, we need not consider whether there was sufficient evidence to support the conviction under a theory of intentional assault and battery.  See Mistretta, 84 Mass. App. Ct. at 907.

The trial judge reasonably inferred that the defendant was armed at the time he entered the victim's house. See Waller, 90 Mass. App. Ct. at 303-304 (judge was entitled to make inferences based on expert opinions and testimony, despite defendant positing conflicting theories of events). The victim testified that the defendant "lunged at the sliding door with [his] hand up." She stated that he was coming "[f]rom the outside" of the house and it "looked like he had something [in] his hand." Upon entering the house, the defendant tripped but then immediately got up and began stabbing the victim with "whatever was in his hand." Moreover, the victim's mother testified that she saw the defendant "on top of [her daughter] . . . stabbing her with a knife." It was reasonable for the trial judge to infer that the knife the defendant used to stab the victim was the same object the victim saw in the defendant's hand as he entered her house, rather than (as the defendant suggests) an object he picked up after falling to the floor upon entering the house. See Woods, 466 Mass. at 713, quoting Commonwealth v. Martino, 412 Mass. 267, 272 (1992) ("Where conflicting inferences are possible from the evidence, 'it is for the [fact finder] to determine where the truth lies'").

The Commonwealth also presented evidence that the defendant blamed the victim for "trying to destroy his relationship." This was circumstantial evidence that the defendant had a motive

to hurt the victim and that he would likely have come to the victim's home armed to accomplish his objective that the victim "must never think that she could do that again."  See Commonwealth v. Barbosa, 477 Mass. 658, 666 (2017) (defendant's motive to kill victim supported finding that evidence was sufficient).

Moreover, after the incident, the defendant left a recorded message for his family, stating that he "just made an example out of the" the victim.  The judge was entitled to infer that the defendant would have armed himself to carry out his intention of making an example out of the victim.  See Commonwealth v. Bouley, 93 Mass. App. Ct. 709, 711-712 (2018).  The evidence was sufficient to establish that the defendant was armed with a knife when he entered the victim's house.

Judgments affirmed.